No. 83–5808. PORTER *v.* MCKASKLE, ACTING DIRECTOR, TEXAS DEPARTMENT OF CORRECTIONS. C. A. 5th Cir. Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

This case presents a recurring question concerning the standard for determining when a trial judge has a constitutional obligation to order a psychiatric examination to determine a defendant's competency to stand trial. Especially because the correct answer to that question determines whether petitioner lives or dies, I would grant the petition.[1]

In 1976, petitioner, Henry Martinez Porter, was tried in Texas for the murder of a policeman. He was convicted and sentenced to death. However, the Texas Court of Criminal Appeals overturned his conviction on the ground that petitioner's constitutional right to confront witnesses against him had been violated by the introduction into evidence of materials from a file pertaining to petitioner's conduct while on federal parole during 1973 and 1974. *Porter* v. *State*, 578 S. W. 2d 742 (1979). Among those materials were various reports that cast doubt on petitioner's sanity and capacity to understand legal proceedings. For example, the director of a drug abuse treatment center described petitioner's debilitating and apparently incurable heroin addiction. The director went on to cite petitioner's "'serious mental and emotional handicaps,'" concluding that petitioner's "'[r]ehabilitative rating is very poor.'" *Id.*, at 745. Another report quoted unnamed psychologists to the effect that petitioner had "'a psychopathic personality'" and had manifested "'paranoid schizophrenic behavior.'" *Id.*, at 744.

Petitioner was retried before the same judge who had presided over his first trial. After the jury had been selected but before it was empaneled, the prosecutor for the first time discovered a presentence report, prepared in 1959, that described a psychiatric

---

[1] Adhering to my view that the death penalty is unconstitutional in all circumstances, *Gregg* v. *Georgia*, 428 U. S. 153, 231 (1976) (MARSHALL, J., dissenting), I would grant the petition and vacate the sentence even if petitioner had not presented the substantial claim discussed in the text.

episode in petitioner's past. The report revealed that, while incarcerated on a robbery charge, petitioner was sent from a reformatory to a psychiatric hospital, "because he had hallucinations of seeing his father and speaking to him." After being held at the hospital for a month, petitioner escaped.

After receiving this report from the prosecutor, petitioner's counsel informed the trial judge that he was concerned about the bearing of the newly revealed evidence on petitioner's competency to stand trial and requested the judge to order a pyschiatric examination of petitioner. Counsel also asked for a ruling that the results of such an examination would be admissible only for the purpose of assessing petitioner's competency, and would be excluded from the penalty phase of the trial. The prosecutor acceded to the request for an exam but objected to the proposed limitation on the admissibility of the results thereof. The trial judge ruled with the prosecutor on this issue, indicating that he would grant the request for a psychiatric exam only if the material disclosed thereby were admitted into the record and could be used by either side for any purpose. In the face of this ruling, defense counsel withdrew his request for a competency exam.

At the conclusion of the second trial, petitioner was once again convicted and sentenced to death. The Texas Court of Criminal Appeals affirmed, *Porter* v. *State,* 623 S. W. 2d 374 (1981), and this Court denied certiorari, 456 U. S. 965 (1982).

After exhausting his state remedies, petitioner brought this suit in Federal District Court, seeking a writ of habeas corpus on the ground, *inter alia,* that the trial judge's ruling on his request for a psychiatric examination violated the Due Process Clause. The District Court denied relief without oral argument or an evidentiary hearing. No. C–82–159 (SD Tex., Oct. 28, 1982). The Court of Appeals for the Fifth Circuit affirmed. *Porter* v. *Estelle,* 709 F. 2d 944 (1983).

As the Court of Appeals acknowledged, if petitioner's competency was questionable, the trial judge erred in refusing to order a psychiatric examination unless its results could be admitted by the prosecution in the penalty phase of the trial. See *id.,* at 951. It is settled that, if evidence available to a trial judge raises a bona fide doubt regarding a defendant's ability to understand and participate in the proceedings against him, the judge has an obligation to order an examination to assess his competency, even if the defendant does not request such an exam. *Drope* v. *Missouri,*

420 U. S. 162 (1975); *Pate* v. *Robinson,* 383 U. S. 375 (1966). It is equally clear that statements made by a defendant in the course of a court-ordered competency exam cannot be used against him in either the liability phase or the penalty phase of his trial unless the defendant makes an intelligent and voluntary waiver of his privilege against self-incrimination. *Estelle* v. *Smith,* 451 U. S. 454 (1981). A trial judge may not put a defendant to the choice of forgoing either his right to a competency exam or his right to limit the admissibility of statements he makes during such an exam. Cf. *Simmons* v. *United States,* 390 U. S. 377, 393–394 (1968).

Nevertheless, the Court of Appeals upheld the denial of habeas relief in this case on the ground that the evidence available to the trial judge at the time he made his ruling was insufficient to cast doubt on petitioner's competency. The Court of Appeals made two points in support of this conclusion. First, the trial judge had had an opportunity to observe petitioner in the course of his first trial and in the preliminary stages of the second trial, and petitioner had participated competently in those proceedings. Second, the psychiatric episode that had recently come to the parties' attention had occurred when petitioner was 17, 20 years before the time of the second trial, and thus had little probative value.

In my view, the factors relied upon by the Court of Appeals are insufficient to support its conclusion. In *Drope* v. *Missouri, supra,* at 180, we described as follows the standard to be applied by trial judges in situations of this sort:

> "The import of our decision in *Pate* v. *Robinson* is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances, be sufficient. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated."

At the time he was called upon to assess defense counsel's motion, the trial judge in this case was aware of several reports describing petitioner's "paranoid" and "schizophrenic" behavior.

The judge was also aware that petitioner had a serious and seemingly ineradicable heroin addiction. Petitioner's probation records contained reports from psychiatrists regarding petitioner's "psychopathic personality." Finally, the judge had just been informed that petitioner had been confined in a mental hospital at the age of 17 because of hallucinations. In sum, a substantial body of both medical evidence and evidence pertaining to petitioner's behavior cast doubt upon petitioner's ability to comprehend the proceedings against him.[2] Surely the Court of Appeals erred in concluding that the cumulation of these data was insufficient to entitle petitioner to a competency exam.

The foregoing conclusion is reinforced by the fact that both the prosecutor and the state trial judge agreed that petitioner should have been given an examination. In response to defense counsel's motion, the prosecutor conceded that, "the way the case law is," both the trial court and defense counsel had an obligation to have petitioner examined. Tr. 1865. The judge thereupon expressed his willingness to order an examination; he simply refused to limit the admissibility of statements made by petitioner during that exam. *Id.*, at 1866.[3] In short, the persons best situated to assess petitioner's state of mind were unanimous in their view that a competency examination was warranted.

In elaborating its argument rejecting petitioner's constitutional claim, the Court of Appeals relied in part on this Court's refusal hitherto to "prescribe a general standard with respect to the nature or quantum of evidence necessary to require resort to" a competency exam, *Drope* v. *Missouri, supra,* at 172. See 709

---

[2] Cf. *Acosta* v. *Turner,* 666 F. 2d 949, 954–955 (CA5 1982); *Bruce* v. *Estelle,* 536 F. 2d 1051, 1062–1063 (CA5 1976) (discussing the potential impact of schizophrenia upon a defendant's capacity to understand judicial proceedings), cert. denied, 429 U. S. 1053 (1977).

[3] The Court of Appeals brushed aside these concessions, discounting the judge's expressed willingness to order an exam as irrelevant to the issue of petitioner's *right* to an exam, and dismissing the prosecutor's judgment as "mistaken." *Porter* v. *Estelle,* 709 F. 2d 944, 953–954 (1983). Even if one concedes that the trial judge's ruling did not rise to the level of a finding of fact, the judge's receptivity to petitioner's constitutional claim (reflected in the judge's willingness to order a competency exam despite the fact that the jury had already been empaneled) surely is entitled to more weight than it was given by the Court of Appeals.

F. 2d, at 950, n. 3.[4]  If our failure to clarify this area of the law has the effect of defeating claims as substantial as that made by petitioner, it is time we reconsidered the issue of a defendant's entitlement to a competency exam and set a standard that would provide lower courts better guidance.

I would grant the petition and set the case for argument.

---

[4] Other Courts of Appeals have also emphasized the absence of any "general standard" enunciated in our two decisions in this field.  See, *e. g., Williams* v. *Bordenkircher,* 696 F. 2d 464, 466 (CA6), cert. denied *sub nom. Williams* v. *Sowders,* 461 U. S. 916 (1983); *United States ex rel. Rivers* v. *Franzen,* 692 F. 2d 491, 496 (CA7 1982); *Collins* v. *Housewright,* 664 F. 2d 181, 183 (CA8 1981) *(per curiam),* cert. denied, 455 U. S. 1004 (1982).