Rondol HAMMER

v.

James A. BOWLEN.

No. 3:95–0145.

United States District Court,
M.D. Tennessee,
Nashville Division.

June 6, 1996.

Rondol Hammer, Pro Se.

Gordon W. Smith, Amy L. Tarkington, Nashville, Tennessee, for respondent.

### MEMORANDUM

CAMPBELL, District Judge.

The petitioner, proceeding pro se, is an inmate at the Southeastern Tennessee State Regional Correctional Facility in Pikeville, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against James Bowlen, Warden of the prison, seeking a writ of habeas corpus. The petition for writ of habeas corpus lacks merit and is DISMISSED.

On September 27, 1987, a jury in Rutherford County found the petitioner guilty of first degree murder, armed robbery and joyriding. For these crimes, he received consecutive sentences of life imprisonment (murder) and thirty five (35) years (armed robbery) with a concurrent three year sentence for joyriding.

On appeal, the Tennessee Court of Criminal Appeals affirmed the convictions (Docket Entry No. 9; Addendum No. 2). *State v. Kyger*, 787 S.W.2d 13 (Tenn.Cr.App.1989). The Tennessee Supreme Court later rejected petitioner's application for further review (Docket Entry No. 9; Addendum No. 6).

A petition for post-conviction relief was then filed in the Circuit Court of Rutherford County. Following the appointment of counsel and an evidentiary hearing, the state trial court dismissed the petition. The Tennessee Court of Criminal Appeals upheld the denial of post-conviction relief (Docket Entry No. 9; Addendum No. 8). The Tennessee Supreme Court decided not to grant the petitioner's second application for further review (Docket Entry No. 9; Addendum No. 10).

On February 16, 1995, the petitioner filed the instant petition for federal habeas corpus relief (Docket Entry No. 1). The petition raises several claims attacking the legality of the murder and armed robbery convictions. Specifically, the petitioner questions the sufficiency of the evidence to support the convictions, the effectiveness of his trial and appellate counsel, and the failure to grant his motion to suppress, motion for a change of venue and motion for a severance. In addition, the petitioner takes issue with some of the jury instructions, he claims that the prosecutor and trial judge acted improperly, and he complains that the jury forms did not include a hung jury as a permissible alternative to a verdict.

After examining the petition, the Court determined that the petitioner had stated a claim which could potentially require the issuance of the writ. Accordingly, by an order entered March 27, 1995 (Docket Entry No. 4), the respondent was directed to file an answer, plead or otherwise respond to the petition.

Presently before the Court is the respondent's Answer to the petition (filed May 4, 1995; Docket Entry No. 8), petitioner's Traverse to the Answer (filed November 29, 1995; Docket Entry No. 19), petitioner's Response to the Answer on Ineffective Assistance of Counsel Issues (filed December 4, 1995; Docket Entry No. 23) and respondent's Supplemental Answer (filed February 29, 1996; Docket Entry No. 26). Upon consideration of the petition, the pleadings and the expanded record, it appears that an evidentiary hearing is not needed in this matter. Consequently, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules—§ 2254 Cases.

A petition for writ of habeas corpus may not be considered unless the petitioner has first exhausted all available state court remedies for each claim in his petition. *Cohen v. Tate*, 779 F.2d 1181, 1184 (6th Cir. 1985). The exhaustion requirement springs from considerations of comity between the states and federal government and is designed to give the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971). This means that as a condition precedent to seeking federal relief, the petitioner's claims must have been fairly presented to the state courts. *Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 1205, 71 L.Ed.2d 379 (1982). Once the petitioner's claims have been raised in the state's highest court, the exhaustion requirement is satisfied, even if that court refused to hear the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir.1990).

Among his many claims, the petitioner alleges that he was denied the effective assistance of counsel because his attorney failed to interview and subpoena certain witnesses. The Tennessee Court of Criminal Appeals found that the petitioner had waived this issue by failing to present it in his petition for post-conviction relief. See Docket Entry No. 9; Addendum No. 8 at pg. 4. Therefore, by his procedural default, the petitioner has technically satisfied the exhaustion requirement with respect to this claim.

Nevertheless, to prevent a federal habeas petitioner from circumventing the intent of the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of federal constitutional claims forfeits the right to federal habeas corpus review of those claims, absent a showing of cause for non-compliance and some showing of prejudice arising from the alleged constitutional violations. *Wainwright v. Sykes*, 433 U.S. 72, 84, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977).

The state appellate courts would not review the merits of this ineffective assistance

claim because of petitioner's procedural default. There is nothing in the petition or the record which would satisfy the cause and prejudice analysis set forth in *Wainwright.* Consequently, the unexcused procedural default bars the petitioner from federal habeas corpus review of this claim.

■■■■■ The petitioner challenges the sufficiency of the evidence to support his convictions for murder and armed robbery. The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.,* 443 U.S. at 319, 99 S.Ct. at 2789.

On November 14, 1986, two men wearing ski masks were seen following the owner of a grocery store to his place of business. These men approached the victim and demanded money. When the victim resisted, one of the men murdered him. The pair robbed the victim and sped from the scene in a stolen red truck. The truck was later found abandoned by the police.

The petitioner and a co-defendant stood trial and were found guilty of the robbery and killing. Because the assailants wore ski masks, the prosecution was unable to produce a witness who could identify the petitioner as one of the killers. Without direct testimony identifying the petitioner as one of the perpetrators, the petitioner believes that the evidence was wholly circumstantial and insufficient as a matter of law to support his convictions.

■■■■ However, circumstantial evidence alone may be sufficient to sustain a criminal conviction. *York v. Tate,* 858 F.2d 322 (6th Cir.1988); *Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir.), *cert. denied,* 498 U.S. 903, 111 S.Ct. 265, 112 L.Ed.2d 221 (1990); *United States v. Harris,* 792 F.2d 866, 868 (9th Cir.1986). In this case, a police scanner belonging to the petitioner was found in the vehicle abandoned by the killers. His fingerprints were found on the police scanner and on an ashtray in the truck. Several witnesses gave physical descriptions of the two men which, apparently, the jury felt matched the physical makeup of the defendants. While the petitioner offered an alibi defense and an explanation for the fingerprints, the jury obviously did not find this evidence credible. Viewing the evidence in a light most favorable to the prosecution, the Court finds that there was sufficient circumstantial evidence from which a rational trier of fact could find beyond a reasonable doubt that the petitioner was guilty of these crimes. Therefore, this claim has no merit.

■■■■ The petitioner also presents five claims related to the jury instructions. Specifically, he alleges that the trial judge improperly instructed the jury on an inference of guilt from flight, an inference of guilt from admissions against interest, aiding and abetting, consideration of fingerprint evidence, and the use of language in the instructions that connected the petitioner with his co-defendant.

■■■■ In the petition, it is argued that either the evidence did not justify the given instruction or that the instruction was a misapplication of state law.[1] A petition for federal habeas corpus relief may only be granted when it is found that a citizen is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). Because federal habeas corpus relief is available only to correct errors of a federal nature, a claim that a conviction is the result of

---

1. The petitioner has attempted to expand the scope of this issue by asserting that at least two of the jury instructions, i.e., the instruction allowing for an inference of guilt from flight and the instruction dealing with the consideration of fingerprint evidence, created a constitutionally impermissible presumption of guilt. See Docket Entry No. 19 at pgs. 45–68. The Court has reviewed the instructions and the petitioner's arguments and finds that, in the context of this case, the jury instructions did not create an impermissible presumption of petitioner's guilt.

a state court's misapplication of state law is not cognizable unless the petitioner can establish that the error deprived him of a fundamentally fair trial. *Porter v. Estelle,* 709 F.2d 944, 957 (5th Cir.1983), *cert. denied sub nom, Porter v. McKaskle,* 466 U.S. 984, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984).

The petitioner's jury instruction claims are based upon the perceived misapplication of state law by the trial judge. A review of the record shows that the petitioner was not denied a fundamentally fair trial. Thus, the petitioner's claims attacking his jury instructions are not cognizable in a federal habeas corpus proceeding.

■ This case generated a great deal of publicity. The petitioner contends that extensive media coverage of the crimes and his trial made it impossible to impanel an unbiased jury in Rutherford County. Thus, it is argued that he was denied due process when the trial judge refused to grant his motion for a change of venue.

■ A citizen's right to a jury trial guarantees that a criminal defendant will receive a fair trial by a panel of impartial jurors. This does not mean, however, that jurors must be totally ignorant of the facts and issues involved in a case in order to be deemed impartial. *Irvin v. Dowd,* 366 U.S. 717, 721–724, 81 S.Ct. 1639, 1642–1643, 6 L.Ed.2d 751 (1961). The mere exposure to publicity is not sufficient, standing alone, to give rise to a presumption that the defendant will be deprived of his right to be tried by fair and impartial jurors. *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). Rather, the petitioner bears the burden of showing that a juror was unable to set aside any preconceived notions or opinions and render a verdict based solely upon the evidence presented in court. *Irvin,* supra, 366 U.S. at 723–724, 81 S.Ct. at 1643.

The trial judge was well aware that media coverage may have tainted the pool of veniremen. For this reason, potential jurors were extensively questioned during voir dire about their knowledge of the case and any opinions that they may have formed about the petitioner's guilt or innocence. Questionable jurors were dismissed by the court for cause.

Each member of the jury expressed a belief that he could render a verdict based upon the evidence. The trial judge was satisfied that the jurors would render such a verdict. Having studied the record, this Court is in agreement. The petitioner has failed to meet his burden of showing that at least one of the jurors was predisposed to finding him guilty of the charges. Therefore, the trial court did not err by refusing to grant the petitioner's motion for a change of venue.

■ The petitioner's next claim is a challenge to the trial court's refusal to grant his motion for a severance. The petitioner stood trial with Steve Kyger, his brother-in-law. He claims that certain potentially incriminating statements made by Kyger to the police would not have been admissible against him if he had been tried separately.

To obtain habeas corpus relief, the petitioner must demonstrate that the failure to grant the severance motion rendered his trial fundamentally unfair. *Wharton–El v. Nix,* 38 F.3d 372, 374 (8th Cir.1994), *cert. denied sub nom, Wharton–El v. Hundley,* —— U.S. ——, 115 S.Ct. 1126, 130 L.Ed.2d 1088 (1995). As noted above, the evidence against the petitioner, without Kyger's statements, was sufficient to sustain his convictions. The jury was properly instructed to consider each defendant's innocence or guilt separately. The petitioner was not denied a fair trial. Thus, this claim has no merit.

■ It is alleged that the prosecutor acted improperly by misstating the evidence and by accusing defense counsel "of unfair and improper motives". In order to succeed with a claim of prosecutorial misconduct, the petitioner must show that the prosecutor's conduct was so egregious that he was unable to receive a fair trial. *Lundy v. Campbell,* 888 F.2d 467 (6th Cir.1989). The incidents in question were clearly not egregious and did not deprive the petitioner of a fair trial. Consequently, this claim also lacks merit.

■ In a related issue, the petitioner contends that the trial judge made comments which displayed a bias for the prosecution. To illustrate this claim, we are told that the jury saw the judge become highly agitated with petitioner's attorney when it was be-

lieved that the defense had failed to comply with a court order providing for the exchange of witness statements. In addition, the petitioner takes exception to the judge's attempt to explain a prosecution objection to the jury.

Once the judge realized that he had lost his composure on the bench, he instructed the jury that his conduct had been inappropriate and that the petitioner and his attorney were in no way responsible for any misconduct. In light of this instruction, the trial judge cured any misconception that the jury might have drawn from the incident. Moreover, the petitioner was not prejudiced merely because the judge chose to explain a prosecution objection to the jury.

Prior to trial, the petitioner learned that the prosecution intended to introduce a green army jacket that had been seized at his home and a statement he made to police. The defense filed a motion to suppress the introduction of these items, arguing that the jacket had been seized during an illegal search and that the petitioner had not been *Mirandized* prior to making the statement. The motion to suppress this evidence was denied.

■■■ The petitioner claims that the green army jacket should have been suppressed because the search and seizure was warrantless and without consent. When the state has provided an opportunity for full and fair litigation of such a claim, the Constitution does not require that a state prisoner be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial. *Stone v. Powell,* 428 U.S. 465, 482, 96 S.Ct. 3037, 3046, 49 L.Ed.2d 1067 (1976). In determining whether the petitioner received an opportunity for a full and fair state hearing, this Court must ascertain whether the state court took "cognizance" of petitioner's claim. *Riley v. Gray,* 674 F.2d 522, 525 (6th Cir.), *cert. denied,* 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982).

The petitioner filed a timely motion seeking to suppress the jacket in question. An evidentiary hearing was conducted to determine whether the motion had merit. The petitioner argues that he did not receive a full hearing on this issue because one of the officers involved in the search did not testify.

However, if this officer's testimony was relevant to the petitioner's claim, the petitioner could have insured his presence at the hearing. As it stands, the petitioner had an opportunity to state and support his claim. There are no allegations in the petition or the pleadings to suggest that the petitioner was in any way denied a chance to fully develop his objections to the jacket. Thus, this claim is not cognizable in a habeas corpus proceeding.

■■■ Prior to petitioner's arrest, police officers questioned him at his home. During this questioning, an officer told the petitioner that "he was in it up to his neck." To this comment, the petitioner replied "Well, I may be in it up to my neck, but I wasn't there." The petitioner contends that the trial court erred by allowing this statement into evidence because it was made prior to any Miranda warnings.

■■■ The prosecution may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a criminal defendant unless it can show that the defendant was aware of his rights under the Fifth Amendment prior to questioning. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Custodial interrogation has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Id.,* 384 U.S. at 443–445, 86 S.Ct. at 1612.

The police officers admittedly failed to inform the petitioner of his Fifth Amendment rights before questioning. The respondent argues that Miranda warnings were not required in this situation because the petitioner was questioned at home and was not yet in custody. The necessity for Miranda warnings, however, is a question that hinges upon whether the petitioner was being questioned as a potential defendant rather than upon his custodial status. *United States v. Warner,* 955 F.2d 441, 453 (6th Cir.), *cert. denied sub nom., Redd v. United States,* 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 917 (1992).

Police officers came to the petitioner's home in an effort to persuade his wife to provide evidence against him. Clearly, at the time of questioning, the police had already decided that the petitioner was involved in the crimes. Consequently, this questioning was the type of interrogation requiring the safeguards announced in the *Miranda* decision. As such, it was error for the trial court to allow the introduction of petitioner's statement absent Miranda warnings. Nevertheless, evidentiary issues of this nature are subject to a harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Given the evidence against the petitioner and the exculpatory nature of the statement itself, the Court finds that the introduction of this evidence amounted to nothing more than harmless error.

■ The petitioner also claims that the jury should have been supplied with verdict forms informing them that a hung jury was a permissible alternative to a finding of guilt or innocence. A criminal defendant has no right to an initial jury instruction specifically setting forth the option of a hung jury. *United States v. Arpan*, 887 F.2d 873, 876 (8th Cir.1989). Therefore, this claim has no merit.

Finally, the petitioner complains that he was denied the effective assistance of counsel. Trial counsel was allegedly ineffective because he failed to subpoena a particular witness in support of petitioner's suppression motion, he failed to make an offer of proof as to that witness' testimony, and he failed to object to the introduction of evidence linking the petitioner to his co-defendant.[2] Appellate counsel was allegedly ineffective by his failure to raise consecutive sentencing as an issue on appeal.

■ To establish a claim of ineffective assistance of counsel, the petitioner bears the burden of showing that his attorneys' performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Even if we assume that petitioner's trial and appellate counsel were deficient in some respect, the *Strickland* analysis consists of two components. It is not enough that the petitioner merely establish a deficiency in counsels' representation. The petitioner must also show that the defense was prejudiced as a result of counsels' deficiency. In order to satisfy the prejudice component of the analysis, it is necessary for the petitioner to demonstrate that counsels' failure to act properly rendered the result of the trial and his appeal unreliable or fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 368–369, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993). Only then will counsels' deficiency rise to the level of a Sixth Amendment violation.

The petition and the expanded record lack anything that would seriously cast doubt on the reliability or fairness of petitioner's trial and appeal. Therefore, the petitioner was not denied his Sixth Amendment right to the effective assistance of counsel.

The Court has reviewed the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (1996) ("Act") signed into law on April 24, 1996. The Act makes changes to 28 U.S.C. § 2254 and other habeas corpus statutes. Assuming, but not deciding, that the Act applies, the Court finds that the Act does not change the result in this case.

Having found no claim in the instant petition that would require the issuance of a writ of habeas corpus, the petition shall be dismissed.

An appropriate order will be entered.

---

2. The witness was David Griswald, an agent for the Tennessee Bureau of Investigation. The evidence linking the petitioner to his co-defendant was the green army jacket and co-defendant's statement establishing the petitioner as owner of the jacket.