Gary ANDREWS

v.

Burl CAIN, Warden.

No. Civ.A. 97–3377.

United States District Court, E.D. Louisiana.

Aug. 30, 1999.

Gary Andrews, pro se.

Alison Wallis, Asst. District Atty., Gretna, LA, for Burl Cain.

### ORDER AND REASONS

MENTZ, District Judge.

This matter is before the Court on a writ of habeas corpus under 28 U.S.C. Section 2254 filed by petitioner Gary Andrews. Upon review of the entire record, the court has determined that an evidentiary hearing is not necessary, and that the petition should be dismissed with prejudice.

Andrews is a state prisoner incarcerated in the Louisiana State Penitentiary at Angola, Louisiana. He was convicted of aggravated rape of a juvenile under La.Rev. Stat. ann. § 14:42. He was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. His sentence and conviction were affirmed on appeal. *See State v. Andrews*, 641 So.2d 8 (La.App. 5th Cir. June 28, 1994) (Andrews did not appeal directly to the Louisiana Supreme Court). Andrews filed timely applications for post-conviction relief in the state court system. His writ application to the Louisiana Supreme Court was summarily denied on April 25, 1997.

Andrews filed the present § 2254 petition on October 22, 1997, after the April 24, 1996 effective date of the Anti–Terrorism and Effective Death Penalty Act (AEDPA), and therefore his claim is governed by its provisions. *Lindh v. Murphy,* 521 U.S. 320, 326, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997). There is no dispute that Andrews' petition is timely under the AEDPA, the one-year limitation period having been tolled during the period that his state court post-conviction applications were pending. *See* 28 U.S.C. § 2244(d)(2); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir.1998).

Andrews' petition alleges the following claims for relief:

(1) he was denied the Sixth Amendment right to a fair and impartial trial and the Fourteenth Amendment right to due process due to trial errors: (a) the prosecution used a large hunting knife for demonstrative purposes, instead of a small pocket knife similar to the one described by the victim; (b) the prosecutor withheld impeachment evidence in the form of police department records prepared by Det. Walther; (c) the prosecutor committed acts of misconduct when she referred in open and closing arguments to the "knife" instead of the "weapon," called the defendant "names" and referred to him as a "liar," and proclaimed him "guilty;" (d) he was denied the right to confrontation of witnesses because the victim's mother and expert witnesses were not called to testify in confrontation of the victim; (e) the court permitted illegally seized evidence to be admitted at trial; and (f) the court errone-

ously instructed the jury that they could not go beyond the evidence to seek doubt;

(2) he was denied the Fourth Amendment right to be free from illegal searches and seizures;

(3) he was denied the Sixth Amendment right to effective counsel in the following respects: (a) during voir dire, defense counsel told the jury that Andrews had been convicted of prior crimes; (b) defense counsel failed to subpoena the victim's mother, to use a defense investigator's report, or to call expert witnesses; (c) defense counsel failed to object to the erroneous jury instruction; (d) defense counsel failed to object to the illegally seized evidence or ask for a suppression hearing; (e) defense counsel did not bring up the potential Brady material after the prosecution had rested its case; (f) defense counsel failed to ask for a mistrial after the numerous errors committed by the court and the prosecution; (g) on appeal, defense counsel failed to argue the lack of evidence to support a conviction for aggravated rape.

Under the AEDPA, amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law. *Drinkard v. Johnson,* 97 F.3d 751, 767 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), overruled in part on other grounds, *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). A federal court may not grant a habeas petition for any claim that was adjudicated on the merits in state court unless the state court decision rested on a legal determination that contravenes clearly established Supreme Court precedent, involves an unreasonable determination of the facts in light of the evidence presented, or an unreasonable application of clearly established federal law to the facts of the case. *Id.* at 768 (citing 28 U.S.C. § 2254(d)(1) and (2)). The Fifth Circuit has defined "unreasonable" as used in the AEDPA as a state court decision so clearly incorrect

that it would not be debatable among reasonable jurists. *Id.* at 769. The AEDPA combines the requirement of unreasonableness with a "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. *Id.* at 766; § 2254(e)(1). Thus, the AEDPA's analytical framework mandates federal court deference to the state court adjudication process, and particularly its factual determinations. This is the standard that will be applied in reviewing Andrews' § 2254 petition before this Court.

## CLAIM 1: *Trial Errors Violated the Sixth and Fourteenth Amendments*

### A. Erroneous evidentiary rulings during trial

Andrews claims that he was denied a fair trial and due process because of prosecutorial misconduct: (1) the prosecutor used a large hunting knife in a demonstration of what happened to the victim, instead of a small knife similar to the knife described by the victim; and (2) the prosecutor made improper comments during the trial.

The admissibility of evidence is a matter of state law entrusted to the discretion of the trial court. *See United States v. Polasek,* 162 F.3d 878, 883 (5th Cir.1998). As such, errors regarding the admissibility of evidence do not rise to the level of constitutional violations unless they render the trial fundamentally unfair so as to violate due process. *Neal v. Cain,* 141 F.3d 207 (5th Cir.1998). "Even the erroneous admission of prejudicial evidence can justify habeas relief only if it is 'material in the sense of a crucial, critical highly significant factor.'" *Porter v. Estelle,* 709 F.2d 944, 957 (5th Cir.1983), *cert. denied,* 466 U.S. 984, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984) (quoting *Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir.1977)).

If the trial court erred in allowing the hunting knife to be used as demonstra-

tive evidence, this error was not so fundamentally unfair that it rises to the level of a due process violation. The trial court overruled defense counsel's objection and allowed the state to use the hunting knife, but explained to the jury that it was not the same as the actual knife. Trial Tr. at 66–69. The prosecutor did not offer the hunting knife into evidence and throughout the trial made it clear that the knife actually used in the rape was never recovered.

■ Likewise, statements made by the prosecutor during her opening and closing arguments are not evidence, and the jury was so instructed. Jury Instructions at 4. When the prosecutor referred in her opening statement to the defendant as "a horror and evil," and after objection by the defendant, the court admonished counsel to stick to the facts. Trial Tr. 7/27/93 at 15–16. The prosecutor's references to the weapon as a "knife," calling the defendant a "liar," and proclaiming him "guilty" in her closing argument are simply her permissible contentions of what the evidence showed and what conclusions the jury should reach from the evidence.

These alleged errors clearly do not rise to the level of constitutional violations. Accordingly, Andrews has not shown that the state court's decision finding no prosecutorial misconduct involved an unreasonable application of clearly established federal law, or an unreasonable determination of facts.

### B. Erroneous Jury Instruction

■ Andrews claims that the trial judge's jury instruction on reasonable doubt impermissibly instructed the jury: "You must not go beyond the evidence to find facts or circumstances creating doubts." In fact, the entire jury instruction at issue reads as follows:

You are prohibited by law and your oath from going beyond the evidence to seek doubts upon which to acquit the defendant, but must confine yourselves strictly to a dispassionate consideration of the testimony given upon the trial. You must not resort to extraneous facts or circumstances in reaching your verdict. That is, you must not go beyond the evidence to find facts or circumstances creating doubts, but must restrict yourselves to the evidence that you heard on the trial of this case, or lack of evidence.

These jury instructions are a fair and accurate representation of Louisiana law, which requires a trial court to instruct the jury that it may consider only the evidence or the lack of evidence. *See* La.Code Crim.Proc. art. 804(A)(2). Andrews makes no argument that this charge is contrary to clearly established federal law. Accordingly, the state court decision rejecting this ground was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, this claim is without merit.

### C. Prosecutor withheld impeachment evidence in violation of *Brady v. Maryland*

Andrews claims that the prosecution violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by not disclosing police department records that were inconsistent with the testimony of the victim.

■ In *Brady,* the United States Supreme Court held that the suppression of evidence favorable to the accused violates due process whether or not the state acted in good faith. Successful establishment of a Brady claim requires that a petitioner establish: (1) that the prosecution suppressed the evidence; (2) that this evidence was favorable to the accused; and (3) that the evidence was material either to guilt or punishment. *See East v. Johnson,* 123 F.3d 235, 237 (5th Cir.1997).

Brady's requirement that the prosecution disclose exculpatory evidence does extend to information that could be used to impeach government witnesses. *See United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481

(1985). The suppressed information, however, must still be 'evidence' that is 'material either to guilt or to punishment.' *Brady,* 373 U.S. at 87, 83 S.Ct. at 1197. Evidence is material 'only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different.' *Wood v. Bartholomew,* 516 U.S. 1, 5, 116 S.Ct. 7, 10, 133 L.Ed.2d 1 (1995).

*Felder v. Johnson,* 180 F.3d 206, 212 (5th Cir.1999).

■ The police records state that the defendant was "armed with a small lock bladed type knife," and that the defendant was "armed with a small knife that he took out of his pocket." Two of the records state that the victim was "raped repeatedly." Andrews contends that if these reports had been disclosed at trial, he could have impeached Det. Walther and/or the victim. Andrews contends that the police records conflict with the victim's initial statement to the police as well as the prosecution's position at trial that she did not see the knife. He also contends that the record's references to "raped repeatedly" is inconsistent with the victim's statement and testimony at trial that she was assaulted once. According to Andrews, the police records would either show that Det. Walther had falsified police records or impeach the victim at trial.

In her initial statement to the police, the victim stated: "He had a knife with him. He put the knife up to my neck and threatened to use it if I didn't do what he said." When asked what kind of knife it was, she stated: "I don't really know, because I couldn't see it. I think it was a small knife he took out of his pocket." *See* Exhibit B to Petition.

At trial, Det. Walther testified on cross-examination that the victim advised him that she saw a small knife and felt it at her throat, but that she would not be able to identify any particular knife. Trial Tr. 7/27/93 at 59–62. "[A]ll she could identify it was a small knife that he had taken from the pocket of his pants." Trial Tr. 7/27/93 at 60.

After testifying that the defendant "got a knife out of his pocket and put it up against my neck," the victim was asked by the prosecution to describe the knife:

Q: Can you describe that knife?

A: It was a small knife with a silver blade.

Q: Okay. Can you tell the ladies and gentlemen of the jury how long the blade was?

A: It was probably about this long (indicating) maybe three or four inches.

Q: Okay. Could you see the handle of the knife?

A: No, it was in his hand.

Trial Tr. 7/27/93 at 65. The victim's school counselor corroborated her testimony that her mother's boyfriend came into her room with a "kitchen knife." Trial Tr. 7/27/93 at 43.

The court finds that the state court's decision rejecting this claim is a reasonable application of clearly established federal law to the facts. The police records do not constitute Brady material. The records are neither favorable to the accused nor material to guilt or punishment. The evidence was consistent that the victim saw the knife, but not in sufficient detail to describe the knife with any particularity. She knew that it came from his pocket, and that it was small. She felt it against her neck and was able to approximate the length of the blade. Clearly, there is no material inconsistency between these statements and the victim's initial statement to the police. Moreover, any "impeachment" with minor inconsistencies in the description of the knife, which was admittedly never recovered, would not alter the overwhelming evidence that the defendant used a knife to threaten the victim during the rape.

Likewise, the reference in the police records to "raped repeatedly" would not create any reasonable probability that the

result of the proceeding would have been different. This evidence was not favorable to the defendant. The supplemental police report by Walther describes a single rape consistent with the victim's testimony, thus belying any intent of Walther to falsify records. The defendant was charged with a single rape. The prosecution did not contend at trial that the victim was raped repeatedly. The defendant was convicted of a single rape. To the extent that the police record might show inaccuracies in police records or methods, such evidence could not overcome the overwhelming evidence establishing the rape with which Andrews was charged. Thus, the prosecution did not have an obligation under *Brady* to produce the police records, and Andrews' claim has no merit.

### D. Denial of the Right To Confrontation Of Witnesses

■ The Confrontation Clause of the Sixth Amendment gives the accused the right "to be confronted with the witnesses against him." This is a right to an adequate opportunity to cross-examine adverse witnesses in a face to face confrontation at trial to allow the jury to judge the credibility of the witness. *See e.g., Ohio v. Roberts,* 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980); *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965); *Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

Andrews claims that he was denied his right of confrontation because the victim's mother did not testify at trial. He contends based on a statement she gave to a defense investigator that she should have been called as a witness to contradict the victim's testimony. He also contends that an expert child psychologist and an expert to test the physical evidence should have been called.

Neither Andrews' attorney nor the prosecution chose to call the victim's mother to testify nor did they use her statement at trial. Andrews' had an op-

portunity to cross-examine all witnesses against him. This is all that the Confrontation Clause guarantees. Andrews had no right to confront or cross-examine witnesses who did not give evidence at trial. Accordingly, the court finds that the state court's decision on this ground of alleged constitutional error does not constitute an unreasonable application of clearly established federal law to the facts of the case.

### CLAIM 2: *Violation Of Fourth Amendment Right To Be Free From Illegal Searches And Seizures*

■ Andrews claims that his conviction was based on evidence obtained in an illegal search and seizure. Under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), a state prisoner can raise a Fourth Amendment claim in a federal habeas corpus proceeding only upon a showing that the state failed to provide him with an opportunity for a full and fair litigation of the claim. The Constitution requires only that the state provide processes where a petitioner is given the opportunity, regardless of whether he avails himself of such. *Caver v. Alabama,* 577 F.2d 1188, 1192 (5th Cir.1978); *Smith v. Maggio,* 664 F.2d 109 (5th Cir.1981).

An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

*Caver,* at 1192.

■ Andrews has not alleged or shown that the state processes prevented litigation of his Fourth Amendment claim on its merits. Andrews had such an opportunity prior to trial, upon direct appeal, and upon his post-conviction applications within the state judicial system. Further analysis of Andrews' argument therefore is unwarranted.

■ The court notes, however, that Andrews' Fourth Amendment claim is frivolous. The uncontradicted testimony at trial showed that Det. Walther went to the apartment where the defendant had lived briefly with the victim and her mother. Det. Walther was accompanied by the victim, her father, and another detective. Trial Tr. 7/27/93 at 40–41. They found the front door to the apartment open. They entered with the victim's consent. The defendant was not present. Det. Walther did not search any part of the apartment. They went directly to the victim's bedroom, where Det. Walther asked the victim to remove her bed sheets (where she had been raped), and to gather the clothing she had put on after the rape. Det. Walther believed he was in the apartment under the authority of the victim's consent. Trial Tr. 7/27/93 at 59.

A voluntarily given consent is an exception to the search warrant requirement and is therefore constitutionally permissible. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) There is no evidence show that the victim did not voluntarily consent to the entry or voluntarily give her sheets and clothing to the police.

Furthermore, it is well-established that a person who challenges the introduction of damaging evidence secured by a seizure of a third person's property in which he has no legitimate expectation of privacy has not had any of his Fourth Amendment rights infringed. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 434, 58 L.Ed.2d 387 (1978); *United States v. Wilson*, 36 F.3d 1298, 1302 (5th Cir.1994). The defendant did not have any expectation of privacy in the victim's bedroom, her bed sheets, or her personal clothing.

It is the opinion of this Court, then, that the state court denial of Andrews' Fourth Amendment claim based on the victim's consent did not rest on a legal determination that was contrary to clearly established federal law, nor an unreasonable application of such laws to the facts of the case.

### CLAIM 3: *Violation Of Sixth Amendment Right To Effective Counsel*

Andrews claims that he was denied effective assistance of counsel in violation of the Sixth Amendment to the U.S. Constitution. To prevail on this claim, Andrews must show that the state court decision addressing the merits of his ineffective assistance of counsel claim was an unreasonable application of, federal law as determined by the United States Supreme Court, to the facts of the case. 28 U.S.C. § 2254(d).

The well-known criteria of *Strickland v. Washington*, 466 U.S. 668, 690, 696, 104 S.Ct. 2052, 2066, 2069, 80 L.Ed.2d 674 (1984), governs evaluation of claims of ineffective assistance of counsel. In *Strickland,* the Court established a two-prong test for evaluating claims of ineffective assistance of counsel: deficient performance and actual prejudice. If a court finds that the petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. *Id.,* 466 U.S. at 697, 104 S.Ct. at 2069. Under the deficient performance prong of the *Strickland* test, "[a]n attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *U.S. v. Walker,* 68 F.3d 931, 934 (5th Cir.1995) (quoting *U.S. v. Acklen,* 47 F.3d 739, 742 (5th Cir.1995)), *cert. denied,* 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996). Petitioner "carries the burden of proof … and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance." *Crockett v. McCotter,* 796 F.2d 787, 791 (5th Cir.) (citations omitted), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 728 (1986); *Hayes v. Maggio,* 699 F.2d 198, 201–02 (5th Cir.1983). To prove prejudice under the *Strickland* standard, a petitioner "must show that there is a rea-

sonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ Andrews has identified various acts and omissions by his attorney that he argues constitute ineffective assistance of counsel: (1) counsel told the jury during voir dire that Andrews had been convicted of prior crimes; (2) counsel failed to subpoena the victim's mother, use the defense investigator's report, or retain an expert to test the physical evidence or a child psychology expert; (3) counsel failed to object to the erroneous jury instruction; (4) counsel failed to object to the illegally seized evidence or ask for a suppression hearing; (5) counsel did not bring up the potential Brady material after the prosecution had rested its case; (6) counsel failed to ask for a mistrial after the numerous errors committed by the court and prosecution; and (7) on appeal, defense counsel failed to raise the lack of evidence to support a conviction for aggravated rape.

This court need not address grounds (3)–(6) individually. As these grounds alleging an erroneous jury instruction, illegally seized evidence, suppression of Brady material, and evidentiary errors by the court and misconduct by the prosecution do not have any merit, as discussed above, Andrews' claim that his counsel was ineffective for failing to take action on these grounds must also fail. Clearly, there is no "deficient performance" by his attorney where the underlying claim has no merit. His trial counsel can therefore not be faulted for failing to make futile objections or file motions in connection with these alleged errors. *Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir.1984).

Defense counsel told the jury during voir dire that Andrews pled guilty to the following offenses: (1) D.W.I.; (2) failing to have an inspection sticker on his car; (3) illegal discharge of a firearm; (4) felony of unauthorized entry into an inhabited dwelling; (5) issuing worthless checks under a hundred dollars; and (6) conspiracy to possess cocaine. He also informed the jury of the penalties imposed on each crime, which in two instances involved only a fine or suspended sentence, and in only one instance involved time served in excess of one year.

The record reflects that revealing Andrews' prior convictions was a strategic decision to uncover any bias and ensure an impartial jury. Voir dire serves to protect an individual's right to a fair trial "by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984). The strategy also served to lessen the impact of Andrews' lengthy criminal history when he would later testify in his own defense. Certainly, the prosecution would be expected to bring out Andrews' prior crimes during cross-examination. Revealing the damaging criminal history during voir dire, and on direct examination, rather than through the prosecution, would tend to give the appearance of not having anything to hide, as well as give Andrews the appearance of honesty by showing his willingness to plead guilty where he was in fact guilty. A well-informed, strategic decision is within the wide range of professionally competent assistance. *Strickland,* 466 U.S. 668, 687–96, 104 S.Ct. at 2065–66, 80 L.Ed.2d 674. *See also Garland v. Davis,* 898 F.2d 153, 1990 WL 27405 at *1 (6th Cir.), *cert. denied,* 495 U.S. 940, 110 S.Ct. 2192, 109 L.Ed.2d 519 (1990) (counsels' intelligent decision to reveal defendant's criminal history in voir dire was not constitutionally deficient performance).

Moreover, the evidence that Andrews committed the crime for which he was convicted is overwhelming. It is highly unlikely that, if his attorney had acted differently, the jury would have reached any decision other than finding Andrews guilty.

The state court ruled that "there is nothing to show that counsel's performance fell below the standards of [Strickland] or that the defendant was in any way prejudiced by his attorney's actions." This ruling is not an unreasonable application of clearly established federal law to the facts of the case. Accordingly, Andrews' claim of ineffective assistance of counsel on the ground of counsel's conduct during voir dire is without merit.

■ Andrews contends that his counsel was constitutionally ineffective for failing to call witnesses that would have been valuable to his defense. He contends that his attorney failed to use a statement of the victim's mother obtained by a defense investigator or to subpoena the mother to testify. Andrews argues that the report shows that her testimony would contradict the victim's testimony. Specifically, he argues that the victim's mother would have testified that he and she engaged in consensual oral sexual intercourse after which he passed out in her bed; whereas the victim testified that it was her mother who was passed out in the bed when Andrews raped her. He also believes that the mother's testimony would show that the victim was angry with her mother for not letting her live with her father and because her mother and the defendant had sex in her bed while she was visiting her father. He contends this evidence would also weaken the state's theory with regard to the seminal stain on the victim's sheets, and would contradict the victim's denial of being aware that her mother and Andrews had sex on her bed.

The Fifth Circuit has emphasized that "complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir.1978). *Strickland* prejudice does not exist where the evidence would not have been favorable or the uncalled witness would have not

have testified at trial. *Alexander v. McCotter,* 775 F.2d 595 (5th Cir.1985); *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir.1983), *cert. denied,* 467 U.S. 1251, 104 S.Ct. 3534, 82 L.Ed.2d 839 (1984).

The court's review of the investigator's report clearly supports counsel's strategic decision not to call the victim's mother as a witness or to use the investigator's report. The investigator's report contains repeated references to the victim's mother's alcoholism, habitual drunkenness, and general failure to care for the well-being of her daughter. The mother told the investigator that she found needles in Andrews' duffle bag and that he stole money, her dogs, and other things to buy drugs. Most importantly, the mother told the investigator about her fight with Andrews on the night of the rape when Andrews broke into the home and while armed with a knife, forced the mother to have oral sex with him. The similarity of this incident to the victim's assault would have been highly detrimental to the defense.

While the mother did confirm that on a prior occasion she had sex with the defendant on her daughter's bed, she also stated that she had washed the sheets and put clean sheets back on the bed. She did not indicate that her daughter was mad or even aware about this incident. This would confirm the daughter's testimony that she was not aware that they had sex on her bed. None of this information would have helped Andrews, and most likely would have had a prejudicial impact. In addition, the fact that Andrews and the mother had sex on the victim's bed was put before the jury through Andrews' testimony.

The investigator's report does contain the mother's statement that Andrews passed out after they had oral sex, but it also contains the victim's version of the events, including that both her mother and the defendant had been drinking heavily and that her mother was passed out in the neighboring bedroom at the time of the

incident. The defendant denied being drunk on the night in question. He testified that the mother "was drinking steady all evening," and that he "might have drank [sic] a beer and ate. That's the best I can remember." Trial Tr. 7–28–93 at 119. Thus, the report stating that he was passed out was not necessarily inconsistent with the victim's testimony about the facts of the rape and that her mother and Andrews had been drinking all evening. The report clearly would have contradicted Andrews' testimony that "he might have drank [sic] a beer."

Andrews has not shown that the victim's mother was willing and able to testify or that her testimony would have altered the outcome of the trial. *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985). Andrews has failed to show that his case was prejudiced by counsel's decision not to use the investigator's report or to call the victim's mother as a witness.

■ Likewise, Andrews is not entitled to relief on the ground of ineffective assistance for failing to have an expert test the physical evidence or to call a child psychologist. He has not made any showing with respect to how any expert testimony would affect the outcome of the trial. Andrews has not identified an expert witness available to testify on his behalf or the type of testimony such a witness would have provided. Andrews has not established that the failure to retain an expert prejudiced his defense. Accordingly, this court finds that the state court ruling that "[d]ecisions regarding the calling of witnesses are strategic choices which do not constitute ineffective assistance of counsel" is not an unreasonable application of clearly established federal law as determined by the Supreme Court to the facts.

A defendant has a constitutional right to effective assistance of counsel on his first appeal of right. *Evitts v. Lucey,* 469 U.S. 387, 394–95, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); *Douglas v. California,* 372 U.S. 353, 355–56, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Where an allegation of ineffective

assistance of appellate counsel is based on a failure to advance certain issues on appeal, there is no constitutional violation when the proposed issues are without merit. *Mendiola v. Estelle,* 635 F.2d 487, 491 (5th Cir.1981); *Hooks v. Roberts,* 480 F.2d 1196, 1197 (5th Cir.1973), *cert. denied,* 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974).

The evidence of Andrews' guilt is overwhelming. To argue that there was insufficient evidence to convict the defendant would have been frivolous. It is well-settled that appointed counsel is not required to pursue an unwarranted, frivolous appeal. *Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493 (1967).

Thus, Andrews has not shown that the state court decision finding no deficiency or prejudice in counsel's performance involved an unreasonable application of clearly established federal law as determined by the Supreme Court.

Accordingly,

IT IS ORDERED that the petition of Gary Andrews for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED.**